Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7472 | **DATE** | 3/18/2002 |
| **CASE TITLE** | PAUL POMOZAL, et al vs. CITY OF HIGHLAND PARK, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/15/2002 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] This matter comes before the court on the objections of both parties to Magistrate Judge Levin's order of 9/26/01 and clarified on 10/8/01 granting in part and denying in part Plaintiffs' motion to enforce subpoenas. For the reasons set forth in the memorandum opinion and order, we overrule the objections and modify Magistrate Judge Levin's order in part. Magistrate Judge Levin's order is adopted in part and modified in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 19 2002 date docketed | 73 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



MAR 1 9 20

| | |
|---|---|
| PAUL POMOZAL, et al., | ) |
| | ) |
| Plaintiffs, | ) No. 00 C 7472 |
| | ) Judge Ronald A. Guzman |
| v. | ) |
| | ) |
| CITY OF HIGHLAND PARK, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the objections of both parties to Magistrate Judge Levin's order of September 26, 2001 and clarified on October 9, 2001 granting in part and denying in part Plaintiffs' Motion to Enforce Subpoenas. For the reasons set forth below, we overrule the objections and modify Magistrate Judge Levin's order in part.

## BACKGROUND

The Plaintiffs are police officers in Highland Park, Illinois who have alleged that their rights under the First and Fourteenth Amendments to the United States Constitution have been violated by the Defendants through the use of favoritism to patrol officers who are loyal to the Mayor, the City Manager, and the Chief of Police and his Command Staff, rather than loyal to their oaths to the community, by discriminating in promotions, job assignments, job training, and otherwise, against the Plaintiffs and other patrol officers who are loyal members of the patrol

against the Plaintiffs and other patrol officers who are loyal members of the patrol officers' union. The Amended Complaint alleges participation in cheating, the failure to punish officers; the fixing of the oral promotional examination scores; a conspiracy to take the Lieutenant's promotional process effectively out of the hands of the Civil Service Commission, and unfair labor practices. The Amended Complaint further alleges that on or about October 24, 2000 Highland Park promulgated a *Media Relations Policy* that was a restriction of their freedom of speech, and that the Defendants have engaged in retaliatory disciplinary actions against another police officer to make an example of him in order to restrict the Plaintiffs' freedom of speech. The October Media Policy was amended in November 2000.

The matter referred to the Magistrate judge was Plaintiffs' Motion to Enforce Subpoenas. The motion arises out of subpoenas that the Plaintiff served on Jenner & Block, LLC and Thomas P. Sullivan ("the Witnesses"). The Witnesses were retained by the City Council of Highland Park to conduct an independent investigation into allegations of misconduct in the City's police department that had been raised in another lawsuit, *Watt, et al. v. Highland Park Police Department, et al.*, No. 98 C 8123. The *Watt* complaint alleged discrimination by members of the police department based on race, religion and gender, excessive force toward members of the public, and discrimination in athe internal functioning of the department. Thereafter, Mr. Sullivan, with the assistance of partners, associates, and paralegals at Jenner & Block, devoted in excess of 4,700 hours in conducting the investigation.

On May 15, 2000, Mr. Sullivan submitted a 345 page report, and an executive summary of the report, to the City Council. The report contains an overview of the investigation, a discussion of ten subjects which were investigated, and recommendations. After redacting certain

portions of the report for confidentiality reasons, the City made the report public. The Witnesses, however, have never disclosed the raw notes and files they created to the City or anyone else.

The Plaintiffs served identical subpoenas on Mr. Sullivan and Jenner & Block in July 2001, requesting that they produce every tangible thing in their possession "related to the Report made to the Highland Park City Council on or about May 15, 2000..." Plaintiffs' subpoena on Mr. Sullivan also sought to compel him to appear for a deposition. The witnesses objected to the subpoena and this matter was referred to Magistrate judge Levin to resolve these objections. Magistrate judge Levin granted Plaintiff's request for an order that the Witnesses produce to Plaintiffs the tapes of all of the interviews the Witnesses conducted during the course of their independent investigations; he also ruled that the Witnesses produce the memos the Witness had prepared summarizing the content of interviews they conducted during their investigation which were never tapes, or provide an affidavit establishing that producing the memos would be burdensome. The ruling also required the Witnesses to produce the documents that the Witnesses had received during the investigation from the City of Highland Park -- which the Witnesses had volunteered to do. Magistrate judge Levin denied the Motion insofar as it sought an order compelling the production of other documents requested in the subpoenas, and quashed the subpoena insofar as it sought Mr. Sullivan to appear for a deposition. Magistrate judge Levin denied the Witnesses Motion to Reconsider on October 9, 2001.

Plaintiffs object to Magistrate judge Levin's decision not to order Thomas Sullivan to appear for his deposition. Defendants object to Magistrate judge Levin's order to produce the tapes of the interviews they conducted during their independent investigation as well as the memos they prepared of the untaped interviews.

3

## DISCUSSION

Rule 72(a) precludes reversal of a magistrate judge's ruling on a nondispositive matter, such as a routine discovery motion, unless the order is "clearly erronerous or contrary to law." An order is clearly erroneous under this standard only if the district court, upon review, has a firm and definite conviction that the magistrate judge has made a mistake. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948); *Phillips v. United States,* 792 F. 2d 639, 644 (7th Cir. 1986).

### A. Mr. Sullivan's Deposition

Plaintiff's object to Magistrate judge Levin's order denying the taking of Mr. Sullivan's deposition. Plaintiff's claim that the deposition of Mr. Sullivan seeks foundational questions regarding what the witnesses told him. Plaintiffs claim that this information is needed for purposes of authentication in connection with their anticipated motion for summary judgment. Plaintiffs also claim that witnesses have denied statements attributed to them in Mr. Sullivan's report. Mr. Sullivan then might be an impeachment witness with respect to those witnesses that have repudiated their statements to him. After hearing these arguments Magistrate judge Levin denied Sullivan's proposed deposition on the grounds that Mr. Sullivan does not have first hand knowledge of the facts described by him in the May 15, 200 Report. We can not say that this ruling is clearly erroneous or contrary to law. Obviously the magistrate judge has weighed the importance of the possibility of any such impeaching evidence against the burden of production and the possibility of allowing the evidentiary proceedings to stray into collateral matters. The magistrate judge's discretion in balancing such interests deserves deference. We find nothing clearly erroneous about this determination and the objections to it are overruled.

4

**B. Magistrate Judge Levin's Order to Produce Tapes of the Interviews Conducted During the Independent Investigation, as Well As the Memo's Prepared of the Untaped Interviews.**

The Witnesses argue that the magistrate judge should have denied this request because the subpoenas were overly broad, it would impose an undue burden, annoyance and expense on the Witnesses, and because policy considerations militate against requiring non-party independent investigators to produce their investigative materials to a litigant absent a showing that the litigant has a compelling need for them. The core of the Witnesses' objections stems from their status as non-parties to the present proceeding. First, Witnesses argue that compliance with the magistrate judge's order will impose "burden, expense and annoyance" on them. We disagree. The only burdensome part of the magistrate judge's order that we can discern is that aspect which would require the Witnesses to redact what they claim to be their work product from the materials being produced. The plaintiffs have offered to pay for the costs of reproduction and the burden upon the Witnesses will, therefore, be minimal.

The Witnesses also argue that the magistrate judge should have required some showing by plaintiffs that they have attempted to obtain the information they seek from the Witnesses through alternative means before requiring the Witnesses to produce the same. Clearly, if the Witnesses were opposing counsel that would be a requirement. But, that is not the case. The Witnesses are essentially investigators in this case. They retrieved, stored and then published facts. We agree with the magistrate judge that these facts should also be amenable to discovery like any others. Perhaps there would be less confusion had plaintiffs aimed their discovery tools at the City of Highland Park, rather than the Witnesses. But, at this stage, that is more a question

5

of form than of substance. A request to the city would, at best, have resulted in the city requesting the materials from the Witnesses. Just as likely the city would have responded that it was not in possession of the materials. The Witnesses argue that plaintiffs should, in essence, be forced to duplicate or attempt to duplicate the investigation done by the Witnesses rather than merely ask the Witnesses for the results of their investigation. And if this material qualified as work product or was privileged under the attorney client relationship, that would be a valid point. But that also is not the case. We are aware of no established public policy that requires a showing of compelling need to obtain information relevant to lawsuit from a third party which lays no claim to privilege. The fact that the Witnesses in this case are attorneys with a great deal of experience and expertise in litigation no doubt made them better equipped and prepared to conduct an investigation as to the practices and policies of the City of Highland Park's police department. But we have not been made aware of any basis for shielding the relevant information gained by this investigation from use in this litigation. Nor are we certain that to do so is bad public policy, as the Witnesses argue. The purpose of this investigation appears to have been to assure the public of the integrity of the City of Highland Park's police department. The results of the investigation were published and, apparently, were intended all along to be published. It can not, therefore, come as a surprise to anyone, the City of Highland Park or the Witnesses, that the underlying bases for the published report would come under scrutiny. In fact, we would think that the City would be eager disclose the thoroughness of the foundation which underlies its report. We agree with the magistrate judge the tapes and interview memos must be produced.

As to the claim of work product, we are not sure what "work product" is being referred

to. Clearly, it is not work product in the traditional sense as the report was not prepared in anticipation of litigation. Indeed, the Witnesses have rejected any claim of privilege with respect to these materials. From the transcript of the proceedings before magistrate Judge Levin we learn that what the Witnesses' counsel is referring to when he refers to work product is "We have work product, which would be the traditional interview memos galore. Those contain our views of how we're are going to use them, our assessments, things of that sort. To me, that is absolutely inappropriate." This describes what might be referred to as "pure work product", i.e., the analytical thoughts of the attorney, if prepared in anticipation of litigation. But, because the materials were not prepared in anticipation of litigation, there can be no such claim here. What then, is the nature of the work product protection being articulated by counsel? At first blush, our instincts tell us that an attorney's private thoughts and analyses ought somehow to be protected from disclosure. But it is the work product doctrine and the attorney-client privilege that encompass the protection which the law gives to such private thoughts and analyses. And, it does not appear, at this juncture at any rate, that any of the parties are claiming that the protection of either of these two legal doctrines applies in the circumstances of this particular case. So what protection, if any, is this material entitled to? It seems to this court that there is some valid comparison that can be made to those situations in which the opinions of independent experts are sought by parties who have not retained the experts and have not otherwise compensated them for the fruits of their labor. To the extent that the City of Highland Park has paid for the Witnesses' expert analysis (views and assessments) as contained in the memoranda and notes in the investigation's files it is entitled to claim some protection or at least compensation for the use

7

of this product by another party.[1]

The Witnesses also argue that much of the material may be irrelevant to the issues of this case. The Court cannot understand why such a claim would issue from the Witnesses, who are not representing the Defendants in this lawsuit, and who purportedly have no stake in the outcome of this litigation. And if neither relevance nor work product are matters to be reviewed by the Witnesses, it would appear to be minimally burdensome for them to simply hand over *en masse* the materials that are in their possession. Therefore, the Court agrees with the ruling of the magistrate judge insofar as he determined that the objections of the Witnesses were insufficient to block production of the materials requested by the Plaintiffs. Further, we find that it is not necessary for the Witnesses to review the materials for work product or relevance.

However, the City of Highland Park is the real party in interest in this case. If any objections concerning relevance are to be made, they are the City's to make. If the City wishes to assert any such objections, whether based on relevance or other grounds, it is granted leave to create a log for presentation to the magistrate judge. The log shall contain a description of the document, tape, or other item in dispute and any objections relating to its production. The magistrate judge shall review the objections to the log as well as the underlying disputed materials *in camera* and determine whether any materials should be excluded, in whole or in part.

---

[1] Counsel for the Witnesses argues at one point that: "we don't believe that the parties- anyone, even the city, frankly – should be permitted to subpoena us to turn over materials that we gathered, absent some showing of compelling need." However, absent some evidence to the contrary we assume that the City of Highland Park paid the Witnesses to conduct the investigation which is the subject of the subpoena and, therefore, that the City has a legal right to the possession of the fruits of that investigation. Certainly counsel for the Witnesses has referred to the City as the client throughout his entire presentation before Judge Levin thereby implicating an attorney - client relationship. In such a relationship, it is the client that is entitled to the contents of the file, subject to the attorney's right to be compensated for the value of his labors.

8

Because discovery in this case has already been unduly delayed, any and all objections by the City of Highland Park should be filed no later than April 1, 2002. It is our hope that the magistrate judge can complete his rulings on any such objections by May 1, 2002. The case is set for a status hearing on May 15, 2002 at 9:30 AM.

## CONCLUSION

For the reasons set forth above Magistrate Judge Levin's order is adopted in part and modified in part.

**SO ORDERED.** ENTERED: 2/18/02

Judge Ronald A. Guzman
United States Judge

9